## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## at ASHLAND

**Civil Action No. 08-98-HRW**

**UNITED STEEL WORKERS
INTERNATIONAL UNION,**                                         **PLAINTIFF,**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**AK STEEL CORPORATION,**                                    **DEFENDANT.**

This matter is before the Court upon the parties' cross Motions for Summary Judgment [Docket Nos. 14 and 15].   The motions have been fully briefed by the parties [Docket Nos. 19, 20, 21 and 22].   For the reasons set forth below, the Court finds that the Plaintiff is entitled to judgment as a matter of law.

## I.     BACKGROUND

Plaintiff United Steel Workers International Union ("Union") and Defendant AK Steel Corporation ("AK Steel") are parties to a Collective Bargaining Agreement ("CBA") effective October 31, 2004 through October 31, 2008, covering employees working for AK Steel at its Ashland, Kentucky facility [Docket No. 1-2].

This cases arises from the employment, suspension, termination, reinstatement and re-termination of one of AK Steel's Ashland facility employees,

Tina Leighty.

Ms. Leighty began working for AK Steel in 1987.  At the time relevant to this civil action, Ms. Leighty was a clerk in AK Steel's Ashland  facility.   In addition, she occasionally worked overtime as a door machine operator at the coke ovens.   Ms. Leighty also filled in for the  salaried clerk when he/she was absent.

Ms. Leighty's clerical duties included preparing weekly schedules and entering time reports in a computer system for Coke Plant employees' hours worked.  Her time-entering responsibilities included preparing time reports for Coke Plant employees who were paid by AK Steel to attend EMT training classes on Saturdays at a facility outside the plant.  Ms. Leighty herself was an EMT trainee who was paid for her participation in the off-site EMT classes.   In addition to the record-keeping, clerical responsibilities, she physically tagged coal cars for the kind of coal they contained.

On January 22, 2007, Coke Facility Manager Andy Harris informed Donald Stahl, the company's Labor Relations Manager, that he suspected falsification of documents by Ms. Leighty as well as a question concerning her as it related to the EMT classes [Docket No. 1-3, pg. 8].  Basically, there was a question of whether Ms. Leighty was being paid inappropriately [Docket No. 1-3, pg. 8].

Ms. Leighty was suspended, pending an investigation.

2

Subsequently, by letter dated February 1, 2007, AK Steel terminated Ms. Leighty for falsification of information, theft of pay and being in the plant without authorization [Docket No. 14-2].

Plaintiff filed a grievance relating to the termination.   The parties were unable to resolve the grievance and it as referred to arbitration.  Pursuant to the CBA, the parties agreed to be bound by the arbitrator's decision.

A hearing was convened by Arbitrator Barbara Doering on July 20, 2007. Due to arbitrator's schedule, the hearing was interrupted and  continued on November 15, 2007.

The issue before Doering was whether AK Steel had cause to terminate Ms. Leighty's employment.   Both parties presented evidence.  During Ms. Leighty's testimony, AK Steel's counsel questioned her regarding  an alleged falsification of records which occurred in October 2002  [Docket No. 1-6].

In an Opinion and Award submitted on April 3, 2008 Doering ruled that AK Steel did not have just cause to terminate employment.   She found that AK Steel did not sufficiently prove its allegation of "theft", nor did it prove that Ms. Leighty had purposefully falsified information.

In her thirty-page opinion, Doering concluded:

> Under all of the circumstances and after considering all
> of the arguments (not just those mentioned and focused

> on [in the Opinion]), the Arbitrator is of the opinion that
> in this case, there was cause for severe discipline, but that
> based upon what was brought out in arbitration and the
> extent to which the charges were proven, discharge
> should be modified to reinstatement with a final warning
> as to falsification - even where it is by having failed to
> include information in a way that, when discovered,
> reasonably appears to have been deceptive conduct - and
> reinstatement shall be without backpay.

[Docket No. 1-4].

However, prior to the issuance of Doering's Opinion, but following the arbitration, ten days after the record officially closed, AK Steel terminated Ms. Leighty's employment for theft of pay relating to the October 2002 incident.

Thus, Ms. Leighty was never truly reinstated to her employment. Although AK Steel did, following the issuance of Doering's Opinion and Award, revise Ms. Leighty's record to convert the February 1, 2007 termination to a suspension without pay and a "final warning as to falsification" [Docket No. 14-1].

The Union filed this civil action against AK Steel, seeking to enforce Doering's award.

Both parties seek judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.     STANDARD OF REVIEW

### A.     Summary Judgment Standard

Under Rule 56, summary judgment is proper when there are no genuine issues of material fact in the dispute and the moving party is entitled to judgment as a matter of law.

In a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence  on which the jury could reasonably find for the [the nonmoving party]." *Anderson,* 477 U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

### B.    Judicial Review of Arbitration Awards

It is well established that the scope of judicial review of labor arbitration

awards is "very narrow; one if the narrowest standards of judicial review in all of

American jurisprudence." *Lattimer-Stevens v. United Steelworkers, Dist. 27, Sub-*

*Dist. 5*, 913 F.2d 1166, 1169 (6th Cir. 1990). *See also, International Brotherhood*

*of Electrical Workers, Local 429 v. Toshiba America, Inc.,* 879 F.2d 208 (6th Cir.

1989).

The Sixth Circuit recently reiterated precisely how limited the judicial

review of arbitration awards should be. In *Michigan Family Resources, Inc. v.*

*Service Employees*, 475 F.3d 746 (6th Cir. 2007), the Court set forth the parameters

for such review:

> Did the arbitrator act "outside his authority" by resolving
> a dispute not committed to arbitration? Did the arbitrator
> commit fraud, have a conflict of interest or otherwise act
> dishonestly in issuing the award? And in resolving any
> legal or factual disputes in the case, was the arbitrator
> "arguably construing or applying the contract"?

*Id.* at 753.

The Court elaborated:

> So long as the arbitrator does not offend any of these
> requirements, the request for judicial intervention should
> be resisted even though the arbitrator made "serious,"
> "improvident" or "silly" errors in resolving the merits of
> the dispute.

6

*Id.*

## III.   ANALYSIS

The Union argues that Arbitrator Doering's award satisfies the standard set forth in *Michigan Family Resources*, and, thus, AK Steel's refusal to reinstate Ms. Leighty violates the CBA as well as the Labor Management Relations Act. The Union strenuously maintains that the alleged separate cause for termination is nothing but AK Steel's pocket veto of an adverse award.

AK Steel contends that it complied with Doering's award.  It asserts that the February 29, 2008 termination is separate and apart from the February 1, 2007 termination and that Doering's decision pertains only to the latter.   According to AK Steel, Doering had no authority over the February 29, 2008 discharge decision. Thus, AK Steel does not challenge the award, per se; rather, it asks that the Court validate its February 29, 2008 discharge decision.

It is undisputed that the basis for both terminations was falsification and theft of pay.  It is also undisputed that leading up to the hearings, AK Steel continued to supplement its evidence in support of the charges against Ms. Leighty. AK Steel admitted that it discovered information pertaining to the alleged 2002 infraction and questioned Ms. Leighty regarding the same during the arbitration [Docket No. 6, ¶ 9]. Arbitrator Doering considered all the facts set forth by AK

Steel in support of its position, including evidence of the 2002 incident and concluded that AK Steel did not have sufficient cause to terminate Ms. Leighty's employment.

AK Steel asserts that its questions pertaining to the 2002 incident during the arbitration hearing were for the sole purpose of establishing, or, rather, undermining Ms. Leighty's credibility.    Yet, the fact remains that Defendant inquired in this regard.   Thus, it would seem that Defendant waived, in effect, its right to rely upon the 2002 incident as a separate basis upon which to terminate Ms. Leighty's employment.

A non-published case from the Sixth Circuit has bearing on this matter.  In *General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 957 v. Dayton Newspapers, Inc*, 2003 WL 22976576 (6th Cir. 2003), a newspaper carrier dispatcher and union employee, Rick Elliot, was discharged from his employment for "physical abuse of a co-worker." *Id.* at 1.  The Union filed a grievance and the matter proceeded to arbitration where an arbitrator found that the altercation did not constitute "workplace violence" and, as such, the company did not have "just cause" for the termination.  *Id.*  However, immediately after notifying Elliot that he would be reinstated in compliance with the arbitrator's award, the employer, Dayton Newspapers, Inc., terminated his employment for a second time on the

grounds that his "past assaultive behavior" made him a "liability risk." *Id.*

The Sixth Circuit upheld the arbitrator's award of reinstatement of Elliot.

> In our case, Elliott never returned to work. Thus, the
> company had no basis for any additional adverse
> judgment on his suitability for employment. Nor did the
> company become aware of any new facts pertaining to
> his suitability, such as, for example, altercations in which
> he was involved since his termination. This is quite
> different from the precedent on which the company relies
> [involving] a simultaneous reinstatement and firing, as
> occurred here, was held not to be contemptuous, where
> the company had "fresh evidence" to justify the second
> discharge [citations omitted]. Here there was no fresh
> evidence.

*Id.* at 2-3.

The February 29, 2008 termination was not based upon so-called "fresh evidence." AK Steel had the knowledge of the alleged 2002 infraction, indeed it presented some of the same during the hearing. In its dispositve motion, AK Steel admits that at the time of the subject arbitration, it had in its possession a police report relative to the October 2002 incident, copies of Ms, Leighty's pertinent time records as well as the statement of another employee in that regard [Docket No. 14, p. 6-7]. Yet, in response to Plaintiff's assertion that it attempted to avoid the adverse award by using that evidence to discharge Ms. Leighty as second time, AK Steel states that it had not fully investigated the circumstances surrounding the 2002 incident until after the hearing [Docket No. 19, p. 2]. Defendant cannot have

9

it both ways.

 Further, it had ample opportunity to build its case prior to Doering's final award and present the same to Doering.  Indeed, one may go so far as to state that AK Steel had a duty to fully explore the 2002 incident and apprise Doering of its findings.

The Court finds no basis to call into question the award.   It easily satisfies the standard set forth in *Michigan Family Resources*.   To hold otherwise would be to violate the integrity of the Arbitrator's award and permit an end-run around the same.   Therefore, the Court will enforce Doering's award of reinstatement.

## IV.   RELIEF

Plaintiff argues that, in addition to the award fashioned by Doering, Ms. Leighty is entitled to back-pay, beginning one week from the award,  pre-judgment interest and fees.

It would seem that an award of backpay would be warranted, as, pursuant to Doering's award, Ms. Leighty should have been reinstated within one week following submission of the Opinion and Award.  However, an award of pre-judgement interest, in addition, to back-pay, smacks of punitive measures, for which the Court finds no basis.  It is within the discretion of this Court to award

pre-judgment interest. *See e.g., Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982). The Court declines to exercise its discretion in this regard.

As for fees, there is no contract or statute providing for the award of the same. However, the Union suggests that an award of fees is due as AK Steel purposefully held back the six-year old offense in the event of an adverse award. However, there is no evidence in the record which establishes such bad faith. Therefore, the Court is not inclined to award attorney's fees in this case.

## V.     CONCLUSION

The Court having reviewed the motions and the record herein, finds that Plaintiff is entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 15] be **SUSTAINED** and Defendant's Motion for Summary Judgment [Docket No. 14] be **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's member Tina Leighty be immediately reinstated and be awarded back-pay, beginning one week from Arbitrator Doering's Award until her reinstatement.

A Judgment in favor of the Plaintiff will be entered contemporaneously herewith.

This March 2, 2009.



Signed By:

*Henry R Wilhoit Jr.*

United States District Judge

12